UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALFREDO VOLLOLDO, *et al.*,

                          Plaintiffs,

    -against-                               1:14-MC-0025 (LEK/CFH)

FIDEL CASTRO RUZ, *et al.*,

                          Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This matter returns to the Court on Plaintiffs Alfredo Volloldo and Gustavo F. Villoldo's Motion for Reconsideration of the Court's Memorandum-Decision and Order dated January 7, 2016. Dkt. Nos. 67 ("Motion"), 67-1 ("Memorandum"); see also Dkt. No. 66 ("January Order"). Thomas P. DiNapoli, New York State Comptroller, opposes the Motion. Dkt. No. 73 ("Response"). For the following reasons, Plaintiffs' Motion is denied.

**II.    BACKGROUND**

The Court assumes the parties' familiarity with the facts and history of this case and recites only those facts necessary to the resolution of the pending Motion. For further background, reference is made to the January Order.

Plaintiffs commenced this action to enforce a default judgment obtained in Florida state court against the Republic of Cuba and various Cuban entities and officials. Dkt. No. 6 ("1610(c) Motion") at 2. After the Southern District of New York extended full faith and credit to the judgment, id. at 2–3, Plaintiffs filed petitions with this Court seeking an order directing the Comptroller to turn over assets located in the Northern District of New York that are blocked

pursuant to the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. pt. 515, and are being held by the Comptroller as custodian of abandoned property, Dkt. Nos. 7 ("Trans-Cuba Petition"), 17 ("Cuban Entities Petition"), 21 ("Escheated Accounts Petition"). Plaintiffs also filed a motion for entry of a 28 U.S.C. § 1610(c) order. 1610(c) Mot.

On January 7, 2016, the Court issued a Memorandum-Decision and Order that, among other things, granted Plaintiffs' 1610(c) Motion and Plaintiffs' Cuban Entities Petition as to the Banco National accounts, denied Plaintiffs' Trans-Cuba Petition, and stayed Plaintiffs' Escheated Accounts Petition and Cuban Entities Petition as to the other entity accounts pending additional evidence and briefing. Jan. Order at 39–40.

## III. LEGAL STANDARD

A motion for reconsideration may be granted where there is "an intervening change of controlling law, . . . new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting a motion for reconsideration 'is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Advanced Fiber Techs. Tr. v. J&L Fiber Servs., Inc., 751 F. Supp. 2d 348, 382–83 (N.D.N.Y. 2010) (Kahn, J.) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "[R]econsideration 'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Id. at 383 (quoting Shrader, 70 F.3d at 257).

## IV. DISCUSSION

Plaintiffs argue that the Court failed to consider that in Mann v. Compania Petrolera Trans-Cuba (Honey Mann), No. 11172/60 (N.Y. Sup. Ct. Nov. 12, 1968), "not all of the assets of Trans-Cuba were distributed to former shareholders of the company and [therefore] the Comptroller continues to hold the undistributed assets owned by Trans-Cuba as abandoned property to which no claims have been established." Mem. at 2. In fact, as the Comptroller points out in his Response, Resp. at 2, the Court did consider this aspect of Honey Mann in the January Order, noting that "[a]ll of the Trans-Cuba accounts are . . . held in the name of specifically identified shareholders, with the exception of one account which is held on behalf of unknown beneficial owners," Jan. Order at 19.

More importantly, the Court fails to see the significance of the Comptroller's holding certain undistributed Trans-Cuba assets as abandoned property. As the Court stated in the January Order, "[i]n order to attach the Trans-Cuba Accounts under the [Foreign Sovereign Immunities Act ("FSIA")] and the [Terrorism Risk Insurance Act ("TRIA")], Plaintiffs must demonstrate (1) that Trans-Cuba is an 'agency or instrumentality' of Cuba and (2) that the Accounts are the property of Cuba." Jan. Order at 13 (quoting 28 U.S.C § 1610(b)) (citing TRIA, Pub. L. No. 107-297, 116 Stat. 2322 (2002)). Plaintiffs note that no claims have been made to certain undistributed Trans-Cuba assets held by the Comptroller. Mem. at 3. However, Plaintiffs provide no evidence that these assets are the property of Cuba, a prerequisite to the attachment of these assets under the FSIA and the TRIA. Calderon-Cardona v. Bank of N.Y. Mellon, 770 F.3d 993, 1000 (2d Cir. 2014). Moreover, in the January Order, the Court noted its agreement with the Honey Mann court's conclusion that "the Trans-Cuba Accounts are not the property of Cuba."

3

Jan. Order at 24. Accordingly, the Court is not persuaded by Plaintiffs' argument that the Court erred in failing to take into consideration the unclaimed Trans-Cuba assets.

Next, Plaintiffs argue that the Court erred in giving preclusive effect to Honey Mann. Mem. at 6. Specifically, Plaintiffs suggest that "the Honey Mann Court's ruling on Cuba's claims is not [binding on] the Plaintiffs as they were not able to participate in that proceeding and the issues presented by the Plaintiffs in this matter are materially different than those that were before the Honey Mann Court." Id.

Plaintiffs fail to acknowledge that the Court rested its decision to give preclusive effect to Honey Mann on the fact that Honey Mann "was an action in rem . . . which liquidated the assets of Trans-Cuba in New York and adjudicated the ownership of such assets." Jan. Order at 17. Because Honey Mann was an in rem proceeding, its determination of the ownership of the assets remains good against the world. See Levitt v. FBI, 70 F. Supp. 2d 346, 350 (S.D.N.Y. 1999) ("[*I*]*n rem* actions seek to adjudicate interests in property within the court's jurisdiction as against the world."); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1070 (4th ed. 2008) ("Conceptually, in rem jurisdiction operates directly on the property and the court's judgment is effective against all persons who have an interest in the property."); Restatement (Second) of Judgments § 30 (Am. Law Inst. 1982) ("A valid and final judgment in an action based only on jurisdiction to determine interests in a thing . . . [i]s conclusive as to those interests with regard to all persons . . . ."). Plaintiffs do not contest that Honey Mann was an in rem action, and the Court sees no reason to depart from its earlier decision to that effect. See Banco Nacional de Cuba v. Sabbatino, 193 F. Supp. 375, 377 (S.D.N.Y. 1961) (describing section 977-b of the New York Civil Practice Act, under which Honey Mann was brought, as

4

providing for an in rem action), rev'd on other grounds, 376 U.S. 398 (1964); Steingut v. Guar. Tr. Co. of N.Y., 58 F. Supp. 623, 630 (S.D.N.Y. 1944) (same); Meyer v. Petrograd Metal Works, 11 N.Y.S.2d 125, 125–26 (App. Div. 1939) (same). Thus, Plaintiffs' discussion of the rules for determining whether court decisions have res judicata or collateral estoppel effect is irrelevant, and the Court is not persuaded that it erred in giving preclusive effect to Honey Mann.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for Reconsideration (Dkt. No. 67) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: October 27, 2016
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge